DRAINAGE DISTRICT NO. 9 OF MILLER COUNTY *v.*
MERCHANTS' & PLANTERS' BANK.

Opinion delivered February 20, 1928.

1. DRAINS—REQUIREMENT OF NOTICE OF ESTABLISHMENT OF DISTRICT AND ASSESSMENT OF BENEFITS.—The requirements of Crawford & Moses' Dig., §§ 3607, 3615, relating to notice of formation of drainage districts and of the assessment of benefits, are jurisdictional, as publication of notice is in the nature of constructive service, and compliance with the statute is necessary.

2. DRAINS—PUBLICATION OF NOTICE.—Under Crawford & Moses' Dig., §§ 3607, 3615, requiring publication of notices in some newspaper published and having a general circulation in the county and issued within the county, *held* that notices of the organization of a drainage district and of the assessment of benefits therein, which were printed on presses located across the State line, but brought into a town within the county and bearing the name of such town and county and distributed therefrom in the first instance, was a sufficient compliance with such statutes.

Appeal from Miller Circuit Court; *J. H. McCollum,* Judge; reversed.

*B. E. Carter* and *J. D. Head,* for appellant.

*Henry Moore, Jr.,* for appellee.

McHANEY, J.   Appellant, Drainage District No. 9, Miller County, Arkansas, was organized under the provisions of §§ 3607 *et seq.* of C. & M. Digest, and was begun by petition filed in Miller County Court on August 16,

1927. The procedure provided by statute having been complied with, the court, on August 17, 1927, made an order fixing September 3 thereafter as the day on which the court would hear said petition, and directed the clerk to give notice, calling upon the property owners to appear at such hearing and show cause for or against the establishment of the district. The clerk complied with the order of the court by publishing such a notice in the Texarkana Evening News, a newspaper actually printed in the State of Texas, about one-half block across the State line from the Arkansas side, but which carried a Texarkana, Arkansas, headline and dating, and the whole issue of such newspaper, after being so printed in Texas, was actually carted to the office of the Texarkana Evening News on the Arkansas side of the State line, and about one-half block therefrom, and there, for the first time, released and distributed to the public, both by newsboys and by mail.

On the day so appointed for the hearing a majority petition was filed, and the court made an order establishing the district and appointing commissioners, in which it found that the clerk "has given due notice by publication for more than two weeks in the Texarkana Evening News, a newspaper published and having a general circulation in Miller County, Arkansas," etc. Thereafter the commissioners appointed by the court filed their assessment of benefits, and the court fixed October 3, 1927, for a hearing thereon, and the clerk was again directed to publish a notice of this hearing. The notice thereof was published in the same newspaper. On October 1 the appellee, being a property owner in the district, filed its protest against the assessment, on the ground that the assessment of benefits was void, for the reason, as alleged, that no notice had been given by the clerk to property owners of the date fixed by the court to show cause for or against the establishment of the district "by any publication in a newspaper published in and having a general circulation in Miller County, and no notice has been given as required by law of the assess-

ment of benefits by publication for two weeks in any weekly newspaper published and issued and having a general circulation in Miller County, Arkansas."

On October 3, the date set for the hearing, the court entered an order finding "that the Texarkana Evening News is run through the presses and printed in Texarkana, Texas, and is thereafter brought in bulk to the office of said paper at 217 Vine Street, in Texarkana, Miller County, Arkansas, and is there distributed to newspaper boys for sale on the street and to carriers for delivery to subscribers. The court finds that said newspaper is not published in Miller County, Arkansas, that no other notice of said hearing was given, and that said order establishing said district is void."

From that order appellant took an appeal to the circuit court, where, on December 15, 1927, it made a finding substantially in the same language as the finding of the county court, and in addition that "said paper has a *bona fide* circulation in Miller County, and there is no other paper which purports to be published or issued in said county." And entered an order confirming the judgment of the county court, from which the drainage district has appealed to this court.

The only question we find it necessary to decide in this case is whether the above notices were published in compliance with the statute. If so, then the district was legally organized, and notice of the assessment of benefits was properly given, otherwise the judgment of the circuit court is correct.

That part of § 3607, C. & M. Digest, relating to the publication of a notice to the property owners in the establishment of the district, reads as follows: "The county clerk shall thereupon give notice by publication for two weeks in some newspaper published and having a general circulation in the county, calling upon all persons owning property within said district to appear before the court on some day to be fixed by the court, to show cause in favor of or against the establishment of said district."

And that part of § 3615 relating to the notice to be given by the clerk on the filing of the assessment of benefits reads as follows: "Upon the filing of said assessment the county clerk shall give notice of the fact by publication two weeks in some weekly newspaper issued in each of the counties in which the lands of the district may lie."

The act of May 8, 1899, brought forward in the Digest as § 6807 under the head of "Legal Notices and Advertisements," reads as follows:

"All advertisements and orders of publication required by law or order of any court, or in conformity with any deed of trust, or real estate mortgage, or chattel mortgage, where the amount therein received exceeds the sum of $350, or power of attorney or administrators' notices to be made, shall be published in some newspaper published and having a *bona fide* circulation in the county in which the proceedings are had, to which such advertisement or order of publication shall pertain; if there be no newspaper published in such county, then by posting five written or printed notices in five of the most public places in such county; provided, the provisions of this act shall not apply to sales under executions issued by justices of the peace; and provided further, that, as to amounts under $350, notices, written or printed, may be posted in five conspicuous places in the county, and notice shall be served in all cases upon the debtor as summons are now served."

It will be noted in none of the statutes above quoted that the word "printed" is anywhere used therein so as to require such notices to be "printed" and "published" in the county. In the first statute quoted, § 3607, the notice is required to be given by publication "in some newspaper published and having a general circulation in the county." The next section quoted, § 3615, is that the publication shall be in some newspaper "issued" in the county, and that the general statute pertaining to legal notices and advertisements is that they "shall be

published in some newspaper published and having a *bona fide* circulation in the county.''

Under the statute existing prior to 1899 relating to legal notices and advertisements, which provided that the publication shall be ''in some daily or weekly newspaper printed in the county where the suit or proceeding is pending, or where the * * * subject of the proceeding or publication is situated, provided there be any newspaper printed in the county having a *bona fide* circulation therein, which shall have been regularly published in said county for the period of one month next before the date of the publication of said advertisement,'' this court held, in *Jackson* v. *Beatty,* 68 Ark. 269, 57 S. W. 799, that the word ''published'' as used in that statute was synonymous with the word ''printed.'' The court there said: ''Nor will we, in this special statutory and summary proceeding, indulge in any astute refinements of construction in order to show that the statute in regard to jurisdiction has been complied with.''

The substance of the opinion in this case is stated in the syllabus as follows:

''An order calling in county warrants for cancellation and reissue is void where neither the proof of publication, nor the sheriff's return, nor the record of the court, shows that the newspapers in which such order was advertised were regularly published in the county for the period of one month next before the date of the first publication of said advertisement, as required by Mansfield's Digest, § 4356.''

The decision in this case, being under a different statute, cannot be controlling here. Since, as we have seen, the Legislature has removed the requirement that the notice of publication be made in a newspaper printed in the county, the question for our determination is, whether the Texarkana Evening News was published in Texarkana, Miller County, Arkansas, although printed in Texarkana, Texas. Nor do we think that the decisions of this court in *Wolf* v. *Phillips,* 107 Ark. 376, 155 S. W. 924, where it was held that a paper printed in one judicial

district and having a circulation in the other did not comply with the law requiring publication in a newspaper in the district where the land is located, and *Gibson* v. *Incorporated Town of Hoxie,* 110 Ark. 547, 162 S. W. 568, where it was held that the statute requiring certain city ordinances relating to improvement districts to be published in some newspaper published in said city or town for one insertion, were mandatory, and required such notices to be published in a paper actually published in the city or town where the ordinance is passed, and the publication of the ordinance in a newspaper published in the adjoining town of Walnut Ridge was not in compliance with the statute, although there was no paper published in Hoxie at that time, are controlling here.

The whole object of the statute relating to notice in the formation of drainage districts and the assessment of benefits therein is to give notice to that part of the public affected thereby, and is jurisdictional. The publication of the notice must be made in accordance with the statute, as it is in the nature of constructive service and takes the place of actual service on those interested. As was said by this court in *Winn* v. *Campbell,* 94 Ark. 341, 126 S. W. 1060: "That publication required by the statute was intended as a substitute for personal service, and, in order to give the court jurisdiction, compliance with the terms of the statute was imperative."

The best definition of the word "publish" that has been brought to our attention, and the one that apparently has been adopted and accepted generally by the courts of last resort throughout the country, was that of Mr. Justice Field in *Leroy* v. *Jamison,* Fed. Cases 8271, where he said:

"In one sense, a paper is published in every place where it is circulated, or its contents are made known. But it is not in that general sense that the language, 'place of publication' in the statute is used. That language refers to the particular place where the paper is first issued, that is, given to the public for circulation."

This definition was followed by the New York Court in the case of *In re Gainsway*, 66 Misc. Rep. 521, 123 N. Y. Supp. 966, where the court said:

"The proof is satisfactory that the notice appeared in a printed newspaper known as the Remsen News, which was circulated in the town of Remsen, at least five days before the election. But the claim is that the Remsen News is not a newspaper published in the town of Remsen. The proof shows that the Remsen News is a weekly newspaper, printed in some place other than the town of Remsen, but entered as second-class matter in the town of Remsen, and mailed to a large number of subscribers in the postoffice at the village of Remsen, and itself shows that it is intended for the town of Remsen and to be uttered and distributed in the first instance in said town. In my opinion, at the time of the alleged publication, it was a newspaper published in the town of Remsen, and the notice was legally published." .

That decision was under a statute that provided that the notices "shall   *   *   *   be published at least five times before the vote is to be taken, once in one newspaper published in the county in which such town is situated, which shall be a newspaper published in the town, if there be one."

The Illinois Supreme Court, in *Polzin* v. *Rand-McNally & Co.*, 250 Ill. 561, 95 N. E. 623, Ann. Cas. 1912B, 471, defined the word "published" as follows: "By the word 'published' is clearly meant the place where the newspaper is first issued or printed, to be sent out by mail, or otherwise."

See also *People* v. *Read*, 256 Ill. 408, 100 N. E. 230, Ann. Cas. 1913E, 293; *Nebraska Land etc. Co.* v. *McKinley-Lanning Loan & Trust Co.*, 52 Neb. 210, 72 N. W. 357; *Amos Brown's Estate* v. *City of West Seattle*, 43 Wash. 26, 85 Pac. 854; *LeFavor* v. *Ludolph*, 35 Cal. App. 145, 169 Pac. 412. And in 29 Cyc., under the head of "Notices," it said: "The place of publication of a newspaper is that indicated on its face, and such paper is printed in the place so designated, within the meaning of

a statute requiring the publication of a certain advertisement, and it matters not that part or even all of its issue is printed elsewhere, or that part of its issue is mailed elsewhere. The whole city, village or township in which a newspaper is published is its place of publication within the meaning of a statute requiring an advertisement to be published in a newspaper.''

Since, as we have already seen that the Texarkana Evening News, although printed in Texarkana, Texas, is brought across the line into Texarkana, Miller County, Arkansas, showing on its face that it is a Texarkana, Miller County, Arkansas, publication, with such a headline and dating, and for distribution to the public in the first instance, it necessarily follows that such newspaper was published in Texarkana, Miller County, Arkansas, within the meaning of the statutes relating to notices in the organization of drainage districts and the assessment of benefits therein, as heretofore quoted.

The judgment of the circuit court will therefore be reversed, and remanded with direction to enter a judgment overruling the order of the county court and sustaining the legality of the organization of the district and the assessment of benefits therein, in so far as affected by the legality of the notice published in the Texarkana Evening News, and for further proceedings according to law.