## ADDISON et al. v. TOWN OF AMITE CITY et al. *
## No. 1454.

Court of Appeal of Louisiana. First Circuit.
May 14, 1935.

*Rehearing denied June 14, 1935.

---

---

F. E. Burch, of Amite, and Reid & Reid, of Hammond, for appellants.

Rownd & Warner, of Hammond, and Ponder & Ponder, of Amite, for appellees.

LE BLANC, Judge.

This proceeding was instituted by A. L. Addison, Roy M. Stewart, Mrs. S. M. Carpenter, and Mrs. Mae K. Morris, citizens and resident property taxpayers of the town of Amite City with the purpose of enjoining the execution of a purported contract alleged to have been entered into on September 4, 1934, by and between the mayor and board of aldermen of the municipality and the Daily Courier, a newspaper published daily in the city of Hammond, La., by the Courier Publishing Company, Inc., also made defendant herein, to print the official proceedings of the town council of said town of Amite City, including ordinances and delinquent tax notices. Plaintiffs represent in their petition for injunction that the Amite Progress is the only newspaper published within the town of Amite City and is therefore the only newspaper qualified to publish the official business proceedings and official notices of the municipality under the Constitution and Laws of this state. It is averred that the Amite Progress, through its owner and editor, offered to publish the official proceedings and notices at a price within that fixed by law and that the contract entered into with the Daily Courier, notwithstanding said offer by the Amite Progress, can have no legal effect.

On the application as presented to him in the plaintiffs' petition, the district judge granted a temporary restraining order enjoining further execution of the contract with the Daily Courier; but on the hearing of the rule for a preliminary injunction at which time the case was also tried on the merits, he dissolved the temporary restraining order which had issued, and rendered judgment in favor of the defendants and against the plaintiffs, rejecting and denying their demands at their costs. The plaintiffs then took this appeal.

Both defendants filed an exception of no cause or right of action and at the same time answered to the merits. The answers present the issue as to what constitutes the publishing of a newspaper under the statute which requires that the official proceedings of a municipality be printed in a newspaper that is published in the town and whi h shall have been in existence for a period of one year preceding its selection. The contention here is that whereas for a certain part of the year preceding the selection of a newspaper by the town of Amite City, on September 4, 1934, the Amite Progress was printed in the town of Kentwood and not in the town of Amite City, and although entered in the post office at Amite City, it did not come within the requirement of the statute.

The selection of a newspaper as the official journal in which a municipality shall have its proceedings published is provided for by section 22 of Act No. 141 of 1912. By its latest amendment found in Act No. 201 of 1928, the pertinent provisions of the section are as follows:

"That the police juries, municipal corporations and school boards in all the parishes, the Parish of Orleans excepted, at their first meeting on and after the first day of August, 1928, and annually thereafter at their first meeting in July, shall select an official printer for their respective parishes, towns or cities, for a term not exceeding one year, who shall be the editor or owner of an established newspaper published in the parish, town or city, which shall have been in existence for a pe-

riod of one year preceding such selection and which has not missed during said year the publication of more than three consecutive issues, which paper shall be known as the official journal of the parish, town, City or school board, and shall publish in the newspaper of which he is the editor or owner, all official ·proceedings of the police jury, town or city councils, or the school board. * * * The police juries, municipal corporations and school boards throughout the State may at their option have their proceedings, ordinances or notices, etc., published by contract. When the publication of the proceedings, ordinances, notices, etc., of the police juries, municipal corporations or school boards is not done by contract, the compensation for such publication shall be not more than one dollar ($1.00) per square of one hundred words for the first insertion and forty cents for each subsequent insertion, payable monthly or quarterly, at the option of the police jury, municipal corporation or school board. * * * "

■ The first contention of the defendants, presented by their exception of no cause or right of action, is that Act No. 201 of 1928 has been repealed by Act No. 157 of 1932. Looking at the latter act, we find that its sole purpose was to amend and revise the provisions of Act No. 141 of 1912 in so far only as that act regulated the state printing of the state of Louisiana and its several departments. That is made clear by reading the title of the amending act. It states specifically that it is enacted "to amend and re-enact the title and Sections 4 and 7 of Act No. 141 of 1912, entitled" etc. In no manner does it attempt to amend Act No. 201 of 1928, which was a specific act amending only section 22 of Act 141 of 1912, which section, as appears from the herein quoted provisions, prescribed the manner in which the official printing of the proceedings of police juries and municipal corporations in the state should be given out. There is nothing inconsistent with any of the provisions of these various acts, and therefore there is no repeal by implication.

■ The second contention of the defendants under their exception is that it is not mandatory on the part of the municipality to select a printer of certain specified qualifications who shall publish its official proceedings, ordinances, etc., but that by the very terms of section 22, amended by Act No. 201 of 1928, it is given the option to let out the printing by contract to its best advantage. That provision in about the middle part of section 22, on which counsel for defendants

rely in support of this contention, must be read in connection with those that precede and follow it, and when that is done it becomes apparent that it relates to a contract with the official printer provided for in that section of the act when the printing is to be done at a rate that is less than the one pre· scribed by the act itself. In other words, without a contract, the legal rate must be followed; but if there is a newspaper published in the municipality and qualified under the act, which agrees to do the work for less than the legal rate, then the governing authority is given the right to contract with such newspaper. That, as we understand the statute, is the extent to which the municipality can exercise any discretion in the matter.

■ This disposes of the issues presented under the exceptions of no cause of action, and we now come to a consideration of the issue raised in the answers of the defendants to the effect that the Amite Progress was not a newspaper coming within the requirement of the statute, in that it was printed in the town of Kentwood, for som· time, at least, during the year prior to the selection by the town of Amite of its official journal.

It is shown that prior to October 31, 1933, all the material for the Amite Progress was gotten up and prepared in the town of Amite, but that the actual printing of the paper was done in a printing press in the town of Kentwood. The printed copies were then brought to the town of Amite and entered as second-class matter in the post office there. The paper bore the name of Amite, La., in its date line and, as we understand it, that was the place where it was in fact put into circulation. Subsequent to October 31, 1933, it was printed in the town of Amite City. It might be stated here also that it had not missed publication of any issue during the year preceding the awarding of the contract, and therefore if it could be considered as a newspaper that was published in the town of Amite City, it possessed the necessary qualifications under the statute to become the official journal of that municipality. It is to be seen then that the important question is: What constitutes the publishing of a newspaper; is it the place where it is run through the press, or rather that in which it is first placed in circulation?

In examining this point, we find that we are without any authority whatever that bears on it in this state. The weight of authority, however, seems to be what we con-

sider is the sounder view, namely, that the place where it is first put into circulation is the place of publication of a newspaper. From Ruling Case Law, vol. 20, p. 207, under the title Newspaper, at section 7, we quote the following:

"Place of Publication. While in one sense a paper is published in every place where it is circulated or its contents are made known, it has been held by some courts that the place of publication of a newspaper, as the term is used in a statute, is the place where it is first put into circulation, where it is first issued to be delivered or sent, by mail, or otherwise, to its subscribers. Under this rule it is immaterial where the printing is done, and it has been held that a newspaper is published at the place where it is entered in the post office as second class matter. * * * "

This same work recognizes authority to the contrary, holding that the place of publication of a newspaper or other periodical is that where it is printed and not where it is circulated; but, as we have stated, the other view seems to us to be the more logical and is more in accord with the dictionary meaning of the word "publish," one of the various definitions of which is "to put into circulation." See Funk & Wagnalls and Webster's Dictionaries.

We find the following view expressed in Corpus Juris, at page 26, vol. 46, § 20B:

"Printing outside and circulation within locality. Other statutes have been construed so as not to require the actual printing to be within the locality; and it is held that a newspaper printed outside of the locality may be considered as published therein if it is mailed from the locality and distributed to subscribers therein; that the place of publication of a newspaper is the place where it is first put into circulation, where it is first issued to be delivered or sent, by mail or otherwise, to its subscribers. * * * "

A case in which the precise point here under discussion was fully considered and passed on is that of Drainage District No. 9 of Miller County v. Merchants' & Planters' Bank, 176 Ark. 474, 2 S.W.(2d) 1079, 1082, from which we quote the following excerpt:

"Since, as we have already seen, the Texarkana Evening News, although printed in Texarkana, Tex., is brought across the line into Texarkana, Miller county, Ark., showing on its face that it is a Texarkana, Miller county, Ark., publication, with such a headline and dating, and for distribution to the public in the first instance, it, necessarily follows that such newspaper was published in Texarkana, Miller county, Ark., within the meaning of the statutes relating to notices in the organization of drainage districts and the assessments of benefits therein, as heretofore quoted."

In the way of construing what is meant by the "publication" of a newspaper under the statute, we think that that case is similar to the one now before us, and it serves to fortify us in our view that for the purpose intended under our statute, Act No. 201 of 1928, the Amite Progress was a newspaper "published" in the town of Amite City, and as it otherwise met the requirements of the statute, and was the only newspaper published in that town, the governing authorities had no discretion other than to select it as the official journal for the publication of their official proceedings, ordinances, notices, etc. Their action in awarding a printing contract to another newspaper was therefore in violation of the provisions of the statute, and they and their codefendant, the Courier Publishing Company, Inc., should have been enjoined from further executing the same.

For the foregoing reasons, it is now ordered that the judgment appealed from be and the same is hereby reversed, set aside, and annulled, and it is now ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiffs and against the defendants, annulling and avoiding the purported contract entered into between the said defendants on September 4, 1934, and decreeing the same to be of no effect, and it is further ordered that the said defendants be and they are hereby enjoined from attempting to further execute any of the provisions of the said contract.

It is further ordered that the defendants pay all costs of this proceeding.