

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

**GERALD C. MANN**
ATTORNEY GENERAL

April 14, 1939

Hon. Edgar E. Payne, County Attorney
Hockley County
Levelland, Texas

Dear Sir:

Opinion No. O-566
Re: If a newspaper is mailed to its
subscribers within the county and
meets the requirements of the Acts
of Congress with respect to enter-
ing at a given postoffice within
said county, and the printing or
typesetting or other work done
in completing the paper is done
in another county, is such news-
paper published in the county
where mailed under Articles 2039
and 2368a, R.C.S., 1925?

We are in receipt of your letter of
March 30, 1939, in which you request this depart-
ment to render an opinion on the following ques-
tion:

"If a newspaper is mailed to its
subscribers within the county and meets
the requirements of the Acts of Congress
with respect to entering at a given post-
office within said county, and the print-
ing or typesetting or other work done in
completing the paper is done in another
county, is such newspaper published in
the county where mailed under our statutes?"

The statutes specifically referred to
are Articles 2039 and 2368a of the R.C.S., 1925.

Article 2039 covers citation by publica-
tion on a non-resident defendant. The pertinent
provisions are as follows:

Hon. Edgar E. Payne, April 14, 1939, Page 2

> "Such citation shall contain a brief
> statement of the cause of action, and
> shall command the officer to summon
> the defendant by making publication of
> such citation in some newspaper published
> therein, but if not, then in the nearest
> county where a newspaper is published,
> once in each week for four consecutive
> weeks previous to the return day there-
> of."

Article 2358a sets forth requirement cov-
ering advertising for bids by counties and cities.
The terms with which we are concerned are:

Section 2.- Competitive bidding for con-
tracts for public works; advertisement . . .

> "If there is no newspaper published
> in such county, the notice of the letting
> of such contract by such county shall be
> given by causing notice thereof to be
> posted at the county courthouse door for
> fourteen (14) days prior to the time of
> letting such contract. * * * "

Also Sec. 7.-Refunding indebtedness; pro
cedure:

> * * * "Notice of intention to issue
> such funding bonds, including a statement
> of the amount and purpose of such bonds,
> shall be published at least once a week
> for three (3) successive weeks in a news-
> paper of general circulation within such
> county, or within such city, as the case
> may be, at least thirty (30) days before
> the meeting of the Commissioners' Court
> of of the governing body, at which time
> it is proposed to issue such bonds * * *"

It will be noted that the undisputable
purpose of both of said articles is to dissemi-
nate throughout the county information concern-
ing the cause of action in Article 2039 and the
letting of contracts and issuance of funding bonds
in Article 2368a.

While there are no Texas decisions in point, this question has been raised numerous times in other jurisdictions and has resulted in definite division of authority.

In the first place we wish to quote from 46 Corpus Juris, p. 26, par. (20) b:

"Statutory requirements, that newspapers designated or selected must be published within the locality affecting the publication, vary. In construing such requirements the legislative intent governs, especially as to the term 'publish'; and for the purpose of ascertaining the legislative intent resort must be had to the language of the statute itself and may be had to the history of the statute. The whole of a city, village, or township in which a newspaper is published is its place of publication within the meaning of such a statute.

Printing and circulation within locality. Some statutes of this character have been construed as requiring that the actual printing of a newspaper must be within the locality.

Printing outside and circulation within locality. Other statutes have been construed so as not to require the actual printing to be within the locality; and it is held that a newspaper printed outside of the locality may be considered as published therein if it is mailed from the locality and distributed to subscribers therein; that the place of publication of a newspaper is the place where it is first put into circulation, where it is first

Hon. Edgar E. Payne, April 13, 1939, Page 4

issued to be delivered or sent, by
mail or otherwise, to its subscribers.
That fact that, while the printing
plant was damaged by fire, the news-
paper was printed for a number of is-
sues outside the county, but the news-
paper is regularly issued and mailed
to the subscribers just as it has been
the custom to do when the newspaper
was printed in its own plant, has been
held not to affect the validity of the
publication.  It has been held that
the fact that part of the issue of a
newspaper is mailed from elsewhere than
in the locality is immaterial."
(underscoring ours).

The following decisions hold that there
must be actual printing of a newspaper within the
locality to fulfill the statutory requirement of
publication:

State v. Big Horn County, 77 Mo.
316, 324, 250 P 606;

In re Monrovia Evening Post, 199
Cal. 263, 248 P 1017;

Carter v. Land, 164 S.W. 205-306
174 Ga. 811.

Decisions which have construed statutes
so as not to require the actual printing of a
newspaper within the locality of publication are
as follows:

(1) Matter of Gainsway, 66 Misc.
521, 123 NYS 966;

(2) People v. Read, 256 Ill. 408
100 N.E. 230;

(3) In re McDonald 187 Cal. 158,
    201 P 110;

(4) Drainage Dist. No. 9 of Miller
    County v. Merchants' & Planters'
    Bank, 2 S.W. (2d) 1079, 1082,
    176 Ark. 474.

It will be noted that there is even a conflict on the question under discussion among the decisions of the state of California. The case of In re Monrovia Evening Post, supra, holds that a newspaper does not come within the statutory requirement where the typesetting and press work are done at an adjoining city, some distance from the city where the paper has a substantial subscription list. But the case of In re McDonald, an earlier decision, had held that the Ontario Weekly Herald, a newspaper published and circulated at Ontario, California, to a bona fide list of subscribers and possessing the other qualifications required by the statute, is not prevented from enjoying the privileges and the status of a newspaper of general circulation, merely because the mechanical operation of typesetting and press work is actually done in another city. The court said that so to disqualify a newspaper, merely because it was published and circulated in one city, while the mechanical work of printing the paper was done in another city, would be the restrict unduly the evident intention of the legislature.

The intention of the legislature and the purpose of the particular statute under consideration should be the controlling factors. In considering the question propounded, we discount the importance of the case of State v. Big Horn County, supra, because there the obvious policy of the act under consideration and the intention of the legislature were the letting or printing of contracts to

local newspapers. As a matter of fact, the decision says as much, as follows:

"The clear purpose of the Act was
to compel the letting of printing con-
tracts to local newspapers, in order
that local capital and local labor
should secure the benefits of the ex-
penditure of money derived from local
taxes, including their own; the clos-
ing paragraph of the Act emphasizes
this purpose by providing that, where
the newspaper holding the county print-
ing cannot perform a part of the contract,
it must sublet that part of the con-
tract to an establishment which will
do the work within the state and with
Montana labor. We have heretofore held
that 'the word "published", as used
in the statute, evidently means printed
and published. It refers to a newspaper
having its home in the county.' . . .
To hold otherwise would defeat the pur-
pose of the Act by permitting a large
concern situated in a city within the
state, or even without the state, to
control the county printing in any num-
ber of counties by establishing offices
therein and furnishing such offices
with papers for distribution within the
counties."

We are inclined to approve the cogent
reasoning of the New York, Illinois and Arkansas
Courts and adhere to the decisions of these jur-
isdictions as representing the majority opinion
to the effect that a proper construction of the
publication statute does not necessarily require
the actual printing of the newspaper to be within
the locality.

Hon. Edgar E. Payne, April 13, 1939, Page 7


The case of In re Gainesway, supra, is
very much in point. In this decision it is held
that where a newspaper is entered as second-class
matter at a postoffice at a certain town, to be
distributed in the town in the first instance,
and mailed to a large number of subscribers, and
first distributed, circulated, and sold in that
town, though printed elsewhere, it is "published"
in that town within the Liquor Tax Law (Consol.
Laws, c. 34) par. 13, requiring publication of
notice of submission of questions relating to lo-
cal option.

The case of People v. Reed, supra, is
also in point. In this decision it is held that
"publication" of an appropriation ordinance adopted
by the village of Morgan Park in a newspaper pub-
lished weekly in the interest of Morgan Park, Blue
Island, and the entire country along the Blue
Island Ridge, in Chicago, by an unincorporated
company, and entered as second-class matter at
the postoffice at Chicago, is not a publication
within General Act for the Incorporation of cities
and villages, Article 5, paragraph 3, providing
that appropriation ordinances shall be published
in a newspaper published in the city or village,
since the place of publication of a newspaper is
the place where it is first put into circulation
or issued to be delivered by mail or otherwise to
its subscribers, and the testimony of a witness
that the newspaper was published in Morgan Park,
and was a paper of general circulation in the vil-
lage and outside, does not show a publication in
Morgan Park, where the witness understood that a
paper published in any community where it is gen-
erally circulated.

The more liberal view and that conform-
ing with the general intent of the legislature
and the purpose of the publication statutes is



that the place of publication of a newspaper is the locality where it is first put into circulation or issued to be delivered by mail or otherwise to its subscribers, and not necessarily the place of the actual printing of the newspaper.

Finally we refer you to the case of Drainage District No. 9 of Miller County v. Merchants' & Planters' Bank in Arkansas Division, supra, in which it was held that notices of organization of drainage district and assessment of benefits therein, printed in presses located across state line, held nevertheless within requirements of Crawford & Moses' Dig. ¶ 3607, requiring publication of notices "In some newspaper published and having a general circulation in the county," and within section 3616, requiring publication in some newspaper "issued" in the county, in view of Section 6807, where newspaper, though printed across state and county line, was brought into town and county in its headline and dating and was distributed there in first instance.

In the absence of Texas decisions on this matter, it is our opinion that the construction placed upon the publication statutes by the courts of New York, Illinois and Arkansas, among others, should be followed in respect to publication features of Articles 2039 and 2368a. The intent of the Legislature in framing both these provisions was that the subject matter be publicized, and not that printing contracts be let to local newspapers. Publication within the intent of the Legislature will be accomplished in the situation under consideration.

Therefore, we hold that if a newspaper be mailed to its subscribers within a county and meet the requirements of the Acts of Congress, with respect to entering at a given postoffice within said county, and the printing or typeset-

Hon. Edgar E. Payne, April 14, 1939, Page 9

ing is done in another county, such a newspaper would be legally published in the county where mailed within the requirements of the Articles 2039 and 2368a, supra.

Trusting that the above fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Dick Stout
Assistant

DS:omb

APPROVED:

ATTORNEY GENERAL OF TEXAS.