## BARDWELL et al. v. TOWN OF CLINTON et al.

### No. 1826.

Court of Appeal of Louisiana. First Circuit.

April 7, 1938.

R. F. Walker, of Baton Rouge, and W. F. Kline, of Clinton, for appellants.

E. S. Muse, of St. Francisville, for appellees.

LE BLANC, Judge.

This suit has for its main object, the setting aside of a certain contract entered into on June 2, 1937, between the mayor and the board of aldermen of the town of Clinton and a certain newspaper known as the "Clinton Watchman," under which the said newspaper was awarded the printing of the official proceedings of the town of Clinton, including delinquent tax notices and tax sales.

The plaintiffs in the suit are Jesse M. Bardwell and Mrs. Beatrice G. Bardwell, who allege themselves to be citizens and taxpayers of the town of Clinton and the owners and publishers of the East Feliciana Citizen, the only newspaper established and published in the parish of East Feliciana, and therefore the only one qualified to act as the official journal and printer of the municipality of the town of Clinton within the said parish. They aver that they offered to publish the official proceedings of the said town, including all ordinances and other official notices for the sum of $60 per year, "a price within and about one-half of that allowed by law," but that the contract was illegally awarded to the Clinton Watchman, a newspaper which is printed and published in the town of St. Francisville, in the parish of West Feliciana, with Elrie Robinson, its owner and publisher, a resident of the said town and parish.

Alleging that they are taxpayers and that the burden of paying taxes will be increased on them if the town is permitted to expend public funds under an illegal contract, they asked for and obtained a temporary restraining order, upon complying with the provisions of the injunction statute, and asked for a rule nisi for a permanent injunction to prevent the town of Clinton and the Clinton Watchman from further executing the alleged contract.

On the day fixed for trial, certain exceptions were filed by the defendants to the rule nisi which were sustained, and the temporary restraining order was recalled by the district judge. The defendants then filed exceptions to the citation served on them, which exceptions were overruled. An exception of no cause of action was referred to the merits and on issue being joined by the answer of the defendants, the case went to trial on the merits, resulting in a judgment in favor of the defendants and rejecting and dismissing the demands of the plaintiffs at their costs. An appeal was then taken to this court.

The defendants have filed two motions to dismiss the appeal. The first is based on what is stated to be lack of jurisdiction of this court to sustain the appeal as the plaintiffs, in their petition, fixed the amount of their bid for the contract at the sum of $60, and therefore the amount involved in the controversy is below the minimum of $100 with which this court is vested with jurisdiction by the Constitution of this state. The second motion is based on the failure of the principals and surety on the appeal bond to have made the required affidavits regarding their solvency and the lack of the certificate of the clerk of the district court to the effect that the transcript of appeal is complete and correct, in accordance with the rules of this court.

In fixing the jurisdiction of the Supreme Court and the Courts of Appeal with regard to an amount, the Constitution refers to the amount as being the one in dispute or a fund to be distributed. The offer of $60 as alleged in the petition of the plaintiffs herein does not by any term or means constitute the amount in dispute. In fact, as already shown, the allegation is that the offer was "a price within and about one half of that allowed by law," and nowhere in their petition do the plaintiffs ask that they be awarded the contract even at the figure they offered to accept it. As we stated, the principal object of their demand is that the contract as entered into with another newspaper be set aside. We find no merit in the first motion to dismiss the appeal, and the same is therefore overruled.

Neither is there any more merit in the second motion. The matter complained of with regard to the appeal bond is one which the party furnishing the same should have been given notice of and an opportunity to correct within a certain time, all within the provisions of Act No. 112 of 1916, § 3, as amended by Act No. 284 of 1928, and section 9. The same may be said with regard to the second ground of complaint in this motion The failure of the clerk of court to have attached his certificate to the transcript is an error attributable to that official, and before the appellee can take advantage of it and have the appeal dismissed, the appellant must be given time and an opportunity to have the error corrected, which was not done.

See Act No. 234 of 1932. This motion is likewise overruled.

On the merits, we find ourselves confronted with the identical question which was presented to this court in, the case of Addison et al. v. Town of Amite City et al., 161 So. 364; that is, what constitutes the publishing of a newspaper within the terms and meaning of section 22 of Act No. 141 of 1912, as amended by Act No. 201 of 1928? As in that case, there is no dispute as to any of the material facts in the present controversy. These facts we take to be as follows:

The Clinton Watchman, which was awarded the contract as official printer by the town of Clinton, is a newspaper owned by Elrie Robinson, a resident of the town of St. Francisville in, the parish of West Feliciana. Mr. Robinson also owns a newspaper called the "St. Francisville Democrat," and instead of operating two presses, he prints both newspapers in his press in the town of St. Francisville. All local news items and material to be printed in the Clinton Watchman are prepared in the town of Clinton, however, by Mrs. J. O. Dilly, said to be the editor, and who although not a resident of the town of Clinton is nevertheless a resident of the parish of East Feliciana. After it has been run through the press in St. Francisville, the newspaper is brought to Clinton, where it is entered in the post office as second-class matter, and from there distributed and put in circulation. The testimony shows that the paper has been in existence for a period far in excess of one year prior to the time it was awarded the printing contract by the town of Clinton.

As was noted in the case of Addison et al. v. Town of Amite et al., supra, the selection of an official newspaper by a municipality is regulated by the provisions of the acts of the Legislature hereinbefore referred to. The pertinent provision is the one found in Act No. 201 of 1928 and which is to the effect that annually at the first meeting of the governing authorities in July, they shall select an official printer "who shall be the editor or owner of an established newspaper published in the parish, town or city, which shall have been in existence for a period of one year preceding such selection." In construing that provision, we held, in accordance with the weight of authority, that a newspaper is *published* at that place where it is entered in the post office and where it is first put in circulation, and not at the place where it is printed. We adhere to the views therein expressed and hold in this case that the Clinton Watchman is a newspaper published in the town of Clinton, and, as it otherwise met the requirements of the statute, it was properly awarded the contract as the official journal of that municipality.

Counsel for plaintiffs contend, however, that in the Addison Case, no consideration was given to the word "established," which is also used in that portion of the statute which we have quoted, and that by the use of that word it is clear that the intention was that not only must the newspaper be published in the town by which it is awarded the contract, but it must also be established in that town, and this means that it must have its physical plant or establishment in the town.

In order to apply such meaning to the statute, it would be necessary to change its language or at least transpose some of its words. An intention such as counsel would attribute to the statute might probably be conveyed if the word *established* were joined to the word *published* by the conjunction *and,* as indeed they do join them in their reference to the provision under consideration. The provision would then read that the governing authorities shall select an official printer "who shall be the editor or owner of a newspaper published and established in the parish, town or city * * *," which is not its wording at all. As used, the word *established* bears no reference whatever to the physical plant of the newspaper and relates only to its business, and that, in the sense that it is a definitely fixed and settled business in the newspaper world as contradistinguished from one that is just starting out on its career. That meaning is emphasized by the added provision of the statute to the effect that the newspaper which is awarded the contract must be one that has been in existence for a period of one year preceding its selection.

The judgment of the lower court correctly disposed of the issue presented in the case, and it is therefore affirmed, at the costs of the appellants.