330 P.2d 701

D. F. ROSS and J. S. Witt, Plaintiffs-Appellants,

v.

STATE RACING COMMISSION of New Mexico and C. J. Warren, Marvin Ake, Richard Burguete, B. M. Keohane and Howard McDaniel, constituting the members of said Commission, Defendants-Appellees.

No. 6335.

Supreme Court of New Mexico.

Oct. 14, 1958.

Reese, McCormick, Lusk & Paine, Carlsbad, for appellants.

Fred M. Standley, Atty. Gen., Hilton A. Dickson, Jr., Fred M. Calkins, Jr., Asst. Attys. Gen., for appellees.

SHILLINGLAW, Justice.

This is an appeal by the petitioners below who sought by mandamus to compel the issuance by the State Racing Commission of a license to conduct horse racing near Carlsbad, New Mexico. Petitioners were granted an alternative writ of mandamus by the District Court of Santa Fe County on June 11, 1957. The alternative writ set forth that petitioners had made application to the State Racing Commission for a license to engage in horse racing meetings and that said application was refused by the Commission for the reason that:

"In the matter of the application by J. S. Witt and D. F. Ross, for twenty-five (25) race days during October, November and December of 1958 for Carlsbad, New Mexico; No sufficient showing has been made that it will be a successful enterprise.

Should it fail, it would not be in the best interest of racing."

The writ further alleged that the denial of the application and license was arbitrary, capricious, and without authority of law, and that, since the Commission had not found petitioners to be ineligible to receive a license under § 60–6–1 et seq., N. M.S.A.1953, it was the Commission's legal duty under these statutes to issue the license as requested.

The Commission answered admitting the filing of the application, that a hearing was held on the application, that the Commission refused to grant the license for the reasons set forth in the writ, and interposed as affirmative defenses allegations that the petitioners had failed to assert facts sufficient to state a claim and that the court was without jurisdiction inasmuch as the Commission was exercising discretionary functions.

Prior to proceeding to trial on July 1, 1957, before the Hon. David W. Carmody, a stipulation was filed by the parties in open court:

"* * * [P]rior to said hearing [before the Commission], Plaintiffs performed all actions required by said statutes and deposited with the Commission a cashier's check in the amount of $1,250, covering the license fee of $50.00 for each of the twenty-five racing days requested.

"* * * following said hearing of December 5, 1956, the motion was made, and passed by a majority, to delay action upon said application until a later date.

"* * * the applicants submitted a complete and valid application, as amended, and have performed all conditions precedent to Sections 60–6–1 to 60–6–5, inclusive, N.M.S.A.1953 Comp."

The petitioners rested after calling their only witness, Commission member B. M. Keohane, who testified as to the proceedings of the Commission in passing on petitioners' application. Offering no testimony, the Commission rested with a renewal of its motion to dismiss the writ.

The trial court concluded as matters of law that the Commission did, by accepting the application, holding a public hearing, passing upon the application, and publicly stating its reason for denial, fulfill the duties imposed by the state law; that the Commission is empowered with discretionary authority to approve or disapprove all applications, and that mandamus did not lie. The court further concluded that the racing license contemplated by § 60–6–1 et seq., N.M.S.A. 1953, is a privilege created and permitted by the state and subject to the police powers reserved by the state—a mere privilege rather than a constitutionally guaranteed right, that the Commission acted with-

in its discretionary bounds in denying petitioners' application for a racing license, and that, since no appeal is provided from the final discretionary determinations of the Commission, the court could not substitute its own judgment. Upon these conclusions, the court dismissed the alternative writ.

Based on the situation as above developed, petitioners contend that it became obligatory for the Commission to issue them a license for racing. In other words, the petitioners argue that, not having been found ineligible under the statutes and the Commission not having requested further information, the Commission had exercised its discretion and its function then became ministerial only and mandamus would lie to compel the performance of such a ministerial duty—issuance of a license. The Commission contends that, even having found in petitioners' favor as it did under the specific statutory requirements, the Commission still had discretion to grant or refuse a license.

■ Does the Commission have such discretion? Admittedly the petitioners present a very strong case in support of their position. See, Cloverleaf Kennel Club v. Racing Commission of Colorado, 130 Colo. 505, 277 P.2d 226; State ex rel. Palm Beach Jockey Club, Inc. v. Florida State Racing Commission, 158 Fla. 335, 28 So.2d 330. However we have finally concluded that the Commission's power to grant or refuse a license is discretionary.

■ Whether the words of a statute are mandatory or discretionary is a matter of legislative intention to be determined by a consideration of the purpose sought to be accomplished. Lyons v. Gram, 122 Or. 684, 260 P. 220; see also 53 C.J.S. Licenses § 38, p. 633.

Long a part of the existing law of this state is the declared prohibition against gambling in any manner or form as contained in § 40–22–1, N.M.S.A.1953. By the terms of § 60–6–1, N.M.S.A.1953, horse racing likewise finds displeasure among the lawmakers:

"Hereafter it shall be unlawful for any person, firm, association or corporation to hold public horse races or race meetings for profit or gain in any manner unless license therefor has first been obtained from the state racing commission as herein provided for."

Continuing through this latter section of our statutes, there are revealed permissive rules for both horse racing and gambling, and the conditions which premise their activation. These stated prohibitions are a matter of public policy. And the provisions for application for a racing license, the consideration of such application and action thereon as provided by §§ 60–6–2 and 60–6–5, N.M.S.A.1953, are legislative delegations to an administrative body, the State Racing

Commission, which is charged with the guidance of the stated policy. Should there have been no legislative intent to establish a discretionary control over the number, location, and manner of issuing licenses, then no meaning could be given the statement of public policy found in § 60–6–1.

■ As a general rule, power vested in a board to grant a license on prescribed conditions carries with it an implied power to exercise reasonable discretion. State ex rel. Grimes v. Board of Com'rs of City of Las Vegas, 53 Nev. 364, 1 P.2d 570; Erwin v. City of Dallas, D.C. N.D.Tex., 85 F.Supp. 103; see also, 53 C.J.S. Licenses § 38, p. 632.

In Kiddy v. Board of County Com'rs of Eddy County, 57 N.M. 145, 255 P.2d 678, 681, this court defined discretionary duties, quoting from First National Bank v. Hayes, 186 Iowa 892, 171 N.W. 715:

"The distinction between merely ministerial and judicial or other official acts seems to be that, where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves exercise of discretion or judgment, it is not to be deemed merely ministerial. Discretion may be defined, when applied to public functionaries, as the power or right conferred upon them by law of acting officially under certain circumstances, according to the dictates of their own judgment and conscience, and not controlled by the judgment or conscience of others."

The implication of administrative discretion is enhanced in the instant case by a consideration of the language of § 60–6–5, N.M.S.A.1953:

"* * * The determination by the state racing commission of any of the foregoing matters to be determined shall be final and conclusive and not subject to any appeal. In the event any application for a license is refused or rejected, the license fees tendered with the application shall be returned to the applicant."

In addition, § 60–6–2 provides that all members of the Commission shall be of such character and reputation as to promote public confidence in the administration of racing affairs, and that no less than three of the five members shall be practical breeders of race horses within the state of New Mexico. We feel that the legislature would not have taken such great pains to provide for the selection of qualified persons to constitute the Commission's membership were the Commission to perform solely ministerial acts. Here the legislature not only provided

for the selection of persons eminent in their field and gave them authority to "grant and/or refuse and revoke licenses," but further provided that the Commission's determinations should be "final and conclusive and not subject to any appeal."

As stated in Standard "Tote", Inc. v. Ohio State Racing Commission, 98 Ohio App. 494, 130 N.E.2d 455; Ohio Com. Pl., 121 N.E.2d 463, 469:

"Horse racing and legalized wagering thereon, are subjects with respect to which police regulations for the protection of the public safety, morals, and general welfare, are not only proper but are an absolute necessity. Since this is a field in which potential evils abound, the General Assembly should not be expected to anticipate the manifold practices and complex arrangements which involve opportunities for dishonest dealing that should be guarded against so as properly to protect the public."

And the Ohio court continued:

"For the General Assembly to undertake to properly prescribe standards, might defeat its own purpose. The nature of the subject to be regulated is such as to suggest the reason for the broad regulatory powers conferred on the Commission; * * "

We can only conclude that our own legislature in its wisdom likewise intended to confer broad discretionary powers of licensing upon the Commission as an expert body.

■ This court has no power to review reasonably exercised administrative discretion, but we can correct arbitrary or capricious action which amounts to an abuse of discretion and is thus contrary to law. Yarbrough v. Montoya, 54 N.M. 91, 214 P.2d 769; Parker, Administrative Law, p. 265; Davis, Administrative Law, p. 768; see also City of Albuquerque v. Burrell, 64 N.M. 204, 326 P.2d 1088; Ferguson-Steere Motor Co. v. State Corp. Comm., 63 N.M. 137, 314 P.2d 894; 33 Am.Jur., Licenses § 60, p. 379.

■ Although we have held the State Racing Commission has discretion under the statute, there is no factual basis for the conclusion reached here. The statute requires no submission of a financial statement or analysis showing that the enterprise will be a financial success. Nor did the Commission require of the petitioners any information whatsoever concerning the expected financial success of the operation, as shown by the following testimony of Commissioner B. M. Keohane:

"Q. Following the testimony of Mr. Witt and Mr. Ross at the meeting of 5 May—5 December 1956, and 28 May, 1957, did the Commission

require any further information from the applicants? A. No, we did not.

"Q. Did they request the applicants at either time to submit any further information to the Commission? A. No."

And the parties stipulated that the petitioners "submitted a complete and valid application, as amended, and have performed all conditions precedent * * *." In view of this, we must hold that the Commission did not properly exercise its discretion in this case, but acted arbitrarily in finding that "no sufficient showing has been made that it will be a successful enterprise." There is no evidence to sustain such a finding.

There was ample information obtained by the Commission for it to deny the application on the grounds that the operation of a racetrack at Carlsbad would not be in the best interest of the public. But the Commission did not so find. Having requested no financial information and the statute requiring none, the Commission acted arbitrarily in making the finding upon which it based the denial of petitioners' license. We feel that the petitioners should be afforded the opportunity to submit financial or other necessary information so that the Commission may properly exercise its discretion in granting or refusing a license.

The remedy of mandamus may be extended to discretionary tasks, but ordinarily only to the *doing* of them and not to the manner in which the discretionary task shall be performed. Kiddy v. Board of County Com'rs of Eddy County, 57 N.M. 145, 255 P.2d 678; Wailes v. Smith, 76 Md. 469, 25 A. 922; Clark v. Ardery, 310 Ky. 836, 222 S.W.2d 602.

The order of the lower court dismissing the alternative writ of mandamus is reversed with directions to enter a writ ordering the Commision to vacate its previous order of denial of petitioners' license and to reconsider the application, exercising its discretion in the light of evidence which it has on file or which it shall ascertain.

It is so ordered.

LUJAN, C. J., McGHEE and COMPTON, JJ., and JOHN R. BRAND, District Judge, concur.

SADLER, J., not participating.