398 P.2d 987

STATE of New Mexico ex rel. SUN COMPA-NY, Inc., and Sun Company, Inc., Individually, Plaintiffs-Appellees,

v.

Cipriano VIGIL, Mayor of the Village of Espanola, C. L. Hunter, Tomas Vigil, Luis Quintana, and Bernabe Jacquez, Members of the Village Council of the Village of Espanola, Dolores Haas, Village Clerk of the Village of Espanola, and the Village of Espanola, a municipal corporation, Defendants-Appellants.

No. 7509.

Supreme Court of New Mexico.

Feb. 1, 1965.

Bigbee & Byrd, Zerne P. Haning, III, Santa Fe, for defendants-appellants.

Smith, Kiker & Ransom, Albuquerque, for plaintiffs-appellees.

CARMODY, Chief Justice.

The Village of Espanola appeals from a judgment entered by the district court, making absolute a writ of mandamus, which, in effect, requires the village to publish ordinances and other notices required by law in two separate newspapers.

Although three questions are raised on appeal, we find it necessary to only reach one, viz., whether the word "published" as used in § 14–25–7, N.M.S.A. 1953, is synonymous with the word "printed."

The corporate limits of the Village of Espanola are partially located in Rio Arriba County and partially in Santa Fe County. For some time prior to April 1963, the village had published all of its legal notices in both the New Mexican, a daily newspaper, and in the Rio Grande Sun, a weekly newspaper. The New Mexican is actually printed in the City of Santa Fe, but maintains a reporter in Espanola, whereas the Rio Grande Sun maintains its printing office in the Rio Arriba County portion of the Village of Espanola. Both papers are of general circulation in the village. The Rio Grande Sun holds a second-class mailing permit in Rio Arriba County, but not in Santa Fe County; and the New Mexican holds a second-class mailing permit in Santa Fe County, but not in Rio Arriba County. Following an opinion from the attorney general, the village council voted to publish all future ordinances and legal notices only in the New Mexican. The Sun Company, Inc. then instituted this action, which sought both mandamus and a declaratory judgment.

Section 14-25-7, N.M.S.A. 1953, provides for the publication of ordinances, and, insofar as pertinent, reads as follows:

"* * * all by-laws of a general or permanent nature, and those imposing any fine, penalty or forfeiture, shall be published in some newspaper of general circulation in the municipal corporation, * * * Provided, however, that if no such newspaper is published within the limits of the corporation, then, and in that case, such by-laws may be published by posting copies thereof in three [3] public places, within the limits of the corporation, two [2] of which places shall be the post-office and the mayor's office of such town or city; * * *."

It was the view of the trial court, and is urged by appellees here, that the above language must be read together, or in *pari materia*, with § 10-2-2, N.M.S.A. 1953, which defines a "legal newspaper." This section reads as follows:

"Any and every legal notice or advertisement shall be published only in a daily, a triweekly, a semiweekly or a weekly newspaper of general paid circulation, which is entered under the second class postal privilege in the county in which said notice or advertisement is required to be published; which said newspaper, if published triweekly, semiweekly, or weekly, shall have been so published in such county continuously and uninterruptedly, during the period of at least twenty-six [26] consecutive weeks next prior to the first issue thereof containing any such notice or advertisement, and which said newspaper, if published daily, shall have been so published in such county, uninterruptedly, and continuously, during the period of at least

six [6] months next prior to the first issue thereof containing any such notice or advertisement; Provided, that the mere change in the name of any newspaper, or the removal of the principal business office or seat of publication of any newspaper from one place to another in the same county shall not break or affect the continuity in the publication of any such newspaper if the same is in fact continuously and uninterruptedly printed and published within such county as herein provided; Provided, further, that a newspaper shall not lose its rights as a legal publication if it should fail to publish one [1] or more of its issues by reason of fire, flood, accident, transportation embargo or tie-up, or other casualty beyond the control of, the publisher; Provided, further, that any legal notice which fails of publication for the required number of insertions by reasons beyond the control of the publisher, shall not be declared illegal, if publication has been made in one [1] issue of said publication; Provided, further, that if in any county in this state there shall not have been published therein any newspaper or newspapers for the prescribed period at the time when any such notice or advertisement is required to be published then such notice or advertisement may be published in any newspaper or newspapers having a general paid circulation and/or published and printed in whole or in part in said county."

■ We would observe that one of the reasons for the use of the *pari materia* doctrine is to settle ambiguity, if it exists in the construction of a particular statute. Actually, there is no ambiguity in § 14–25–7, supra, and, therefore, other than to answer the principal issue raised, there would be little need to discuss § 10–2–2, supra.

Appellants urge that the word "published" as used in the statutes means to give notice to the residents of the municipal corporation by advertising the same in a newspaper of general circulation in the municipality, regardless of where the newspaper is physically printed. Appellees, to the contrary, declare that the word "published" contemplates the physical printing of the newspaper within the boundaries of the municipality. The trial court, apparently on the theory that notices must be published in a newspaper having a second-class postal privilege, thereby required the dual publication of the notices by reason of the fact that neither newspaper had a second-class mailing privilege in both of the counties in which the municipality exists.

■ We are of the opinion that the use of the word "published" by the legislature, both in §§ 14–25–7, supra, and 10–2–2,

supra, is not synonymous with the word "printed." Actually, even § 10–2–2, supra, so strongly relied upon by appellees, seems to use the two words in their proper sense. As is apparent from a reading of this section, the word "published" is used many times, whereas a distinction is made in two places in the section when the legislature used the words "printed and published," or "published and printed."

Although this court has not had occasion to pass upon this particular question, it has been considered by other courts in some of our sister states. The verbiage of the acts is different, and the courts of Montana and Georgia held that the legislative use of the word "published" really meant "printed," in that the legislative intent was to channel money back into the local areas from which taxes were collected, rather than giving notice to the residents of the area. See State ex rel. Vickers v. Board of Com'rs of Big Horn County, 1926, 77 Mont. 316, 250 P. 606; and Carter v. Land, 1932, 174 Ga. 811, 164 S.E. 205.

We note also that two California cases relied upon by appellees, In re Monrovia Evening Post, 1926, 199 Cal. 263, 248 P. 1017, and In re Covina Argus-Citizen, 1960, 177 Cal.App.2d 315, 2 Cal.Rptr. 184, involved a statute which required that the notice be "printed and published." However, the opinion in In re Monrovia Evening Post, supra, makes it plain that the ruling was based upon a change of the California statute following decisions by the Supreme Court of California that a newspaper need not be printed within the geographical boundaries of a legal subdivision to be published within the same. See Stanwood v. Carson, 1915, 169 Cal. 640, 147 P. 562, and In re McDonald, 1921, 187 Cal. 158, 201 P. 110. Thus the California cases are not authority for appellees' position here, and actually In re Monrovia Evening Post, supra, specifically pointed out the ordinary difference between "publish" and "printed," but stated that the court was bound by the legislative pronouncement that the newspaper must be both printed and published in the legal subdivision involved.

We are unable to imply a legislative intent as urged by appellees and as announced by the Montana and Georgia courts. Contrariwise, we are impressed by the decision of the Arkansas Supreme Court in Lewis v. Tate, 1946, 210 Ark. 594, 197 S.W.2d 23, wherein the court concluded:

"'We do not think the word "published" as used in the amendment is altogether synonymous with the word "printed." If that meaning alone should be attributed to the word "published" in the connection in which used, it follows that the people intended by the passage of the amendment to deny cities in which a weekly newspaper is not printed the privilege of voting

bonds to build a public hall. Certainly it was not the intention of the people to penalize a city simply because a weekly newspaper was not printed therein. * * * The common and ordinary meaning of the word "published," according to Webster's New International Dictionary, is "to make public, to make known to the people in general." The newspapers might be printed but never published. It is only published when put in general circulation. *The proper and correct meaning of the word "published," as used in the amendment, is that the notice must be inserted for the required time in a newspaper that will make the special election and the date thereof a public matter or known to the people in the city affected. * * * *" "* (Emphasis added.)

and the opinion of the Supreme Court of North Dakota, in Daly v. Beery, 1920, 45 N.D. 287, 178 N.W. 104, wherein the court stated:

"Publication and printing each have a well-understood signification. *Publication means to make known, a notification to the public at large, either by words, writing, or printing. Printing means the impress of letters or characters upon paper or upon other substance.*

"The first implies the means of conveying knowledge or notice; the second implies a mechanical act. *Any means, therefore, which would give notice to the public of any matter desired to be brought to their knowledge would be classed as publication."* (Emphasis added.)

Also, in Allen v. Globe-Democrat Publishing Company (Mo.1963), 368 S.W.2d 460, a case involving the interpretation of a contract rather than statutory interpretation, the Supreme Court of Missouri expressed quite clearly the distinction in the two words, and, at page 464, stated:

"Very few cases have been found which construe the words 'publication' or 'printing' in relation to newspapers. It may be said, with certain isolated exceptions subsequently noted, that the reported cases are generally to the effect that although the 'words "print" and "publish" *are often confused,*' the 'word "publish" cannot be construed to mean "print,"' Wolfe County Liquor Dispensary Ass'n v. Ingram, 272 Ky. 38, 113 S.W.2d 839; there 'is a distinction between printing a newspaper and publishing a newspaper' and a person 'is not required to print a paper in order to publish same, but can have the printing done elsewhere,' Cox v. First Mortgage Loan Co., 173 Okl. 392, 48 P.2d 1060; a newspaper 'might be printed but never published' and it is 'published when put in general circulation,' Lewis v. Tate, 210 Ark. 594,

197 S.W.2d 23; Wolfe County Liquor Dispensary Ass'n v. Ingram, supra; a newspaper is published at that place where it is first put in circulation 'and not at the place where it is printed,' Bardwell v. Town of Clinton, La.App., 180 So. 148; Vick v. Bishop, 252 Ala. 250, 40 So.2d 845; Madigan v. City of Onalaska, 256 Wis. 398, 41 N.W.2d 206; Addison v. Town of Amite City, La.App., 161 So. 364; State v. Briwa, 198 La. 970, 5 So.2d 304; in determining the place of 'publication' it is immaterial where the printing is done. Loos v. City of New York, 170 Misc. 14, 104, 9 N.Y.S.2d 760, 774; and 'it would strain every rule of construction beyond all reasonable limits to read the words "printed" and "publication," which have well defined meanings, as being synonymous. *Printing implies the mechanical art by which type is imprinted upon the paper, whereas, publishing means the conveying of knowledge of notices.*' Haban v. Suburban Home Mortgage Co., Ohio App., 57 N.E.2d 97, 100." (Emphasis added.)

See also Wolfe County Liquor Dispensary Ass'n v. Ingram, 1938, 272 Ky. 38, 113 S.W.2d 839, in which a similar contention as is here made, viz., that the word "published" means "printed," was rejected by the court, as follows:

"* * * Should such a contention be approved by this court, it would virtually be an effort to legislate rather than construe the statute. The word 'publish' cannot be construed to mean 'print.' By reference to Webster's New International Dictionary, the definition of 'publish' is, in part, as follows: 'To promulgate or proclaim, as a law or an edict. To make public in a newspaper, book, circular, or the like.' The words 'print' and 'publish' are often confused. A book may be printed without being published. It is published only when it is offered for sale or put in general circulation. * * *"

■■ We are of the opinion that the intent of our legislature in using the word "published" in § 14–25–7, supra, was to give notice to the public by insertion in a newspaper of general circulation within the boundaries of the municipal corporation, regardless of where the newspaper is physically printed. After all, the aim of a statute requiring legal publications is so that the contents of the notice may be brought home to the public generally. See Pirie v. Kamps, 1951, 68 Wyo. 83, 229 P.2d 927.

■ In answer to the argument that § 10–2–2, supra, requires publication in a newspaper entered under a second-class postal privilege in the county, we only need to say that we do not deem the provision mandatory as urged by appellee. After all, in determining whether a provision is man-

datory or directory, a reasonable construction must be given rather than one which would render the statute absurd. Winston v. Vaughan (W.D.Okl.1935), 11 F.Supp. 954. Generally, in considering whether a requirement of a statute is mandatory or directory, courts look to the subject matter, the importance of the requirement, and its relation to the general object intended to be secured by the act. Those directions in the statute which are not the essence of the things to be done are not commonly considered mandatory, particularly where, by failure to obey, no prejudice will result to those whose rights are protected by the statute. See 2 Sutherland Statutory Construction, §§ 2803–4. See also Ross v. State Racing Commission, 1958, 64 N.M. 478, 330 P.2d 701; and Farmers' Development Co. v. Rayado Land & Irrigation Co., 1923, 28 N.M. 357, 213 P. 202. As we have said, the purpose of the statute is to give the public the opportunity to read the legal publication—this is the mandatory portion of the statute, and the provision for the second-class mailing privilege is of relatively small importance in relation to the general object intended by the act and is merely directory.

■ The petition for the writ and the decision of the trial judge proceeded upon the theory that § 10–2–2, supra, must be literally applied to the facts present in the case at bar, i. e., publication must be made in both the Rio Grande Sun and the New Mexican, since neither has a second-class mailing privilege in both counties. Such a literal application of § 10–2–2, supra, to the factual situation present herein would defeat the purpose of the legislature in § 14–25–7, supra. The purpose of publication statutes is to give notice to the citizens (Pirie v. Kamps, supra), not to double the cost of publication; and this is particularly true when we consider that § 14–25–7, supra, contains an alternative method of giving notice if no newspaper is published within the limits, viz., by posting. The primary purpose of §§ 14–25–7 and 10–2–2 is to give notice to the citizens, with provisions relating to publication, printing, and mailing privileges referring merely to the method of carrying out the intent of the statutes, i. e., notice. To hold otherwise would be to allow the method to control the purpose of the statutes. Were we to adopt the position urged upon this court by the appellee, it would be contrary to the pronouncement made by this court in Cox v. City of Albuquerque, 1949, 53 N.M. 334, 207 P.2d 1017, where we stated:

"Statutes should be construed in the most beneficial way of which their language is susceptible to prevent absurdity, hardships, or injustice, to favor public convenience, and to oppose all prejudice to public interests. Although imperfect in form, they should be sustained by the courts, if they can

be so construed as to give them sensible effect. \* \* \*"

Thus, since mandamus is a remedy for the violation of a clear legal duty, and no such clear legal duty is here required of the officials of the Village of Espanola, it follows that the writ was improvidently issued and should be discharged. The village council had discretion to determine in which legal newspaper of general circulation within its confines the ordinances and notices must be printed.

The judgment of the district court will be reversed, with direction to set aside its judgment and its writ of mandamus and to enter its order dismissing the cause. It is so ordered.

NOBLE and COMPTON, JJ., concur.