188

803 P.2d 673

**Jerry STOKES, Plaintiff–Appellee,**

v.

**Richard Frank TATMAN and Cathy Tatman, Defendants–Appellants.**

No. 18807.

Supreme Court of New Mexico.

Dec. 19, 1990.

Hawthorne & Hawthorne, Charles E. Hawthorne, Ruidoso, for defendants-appellants.

Catron, Catron & Sawtell, Kathrin Kinzer–Ellington, Santa Fe, for plaintiff-appellee.

## OPINION

MONTGOMERY, Justice.

On the Court's own motion, the decision filed herein on November 19, 1990 is withdrawn and the following opinion is substituted therefor.

Defendants Richard and Cathy Tatman appeal from the district court judgment in favor of plaintiff Jerry Stokes for recovery on a promissory note. We affirm.

FACTS

In June 1986, appellant Richard Tatman (Richard) and his wife Cathy Tatman (Cathy) were living on a tract of land near Hondo, in Lincoln County, New Mexico. At Cathy's request, appellee Jerry Stokes (Stokes) went to the property one Sunday in June to discuss a proposed soil excavation. After two meetings with Cathy, Stokes agreed to undertake the work and the parties agreed to an hourly fee. Throughout the relevant period, Stokes' contact was primarily with Cathy, rather than Richard, due to the latter's substance abuse problems and related hospitalization from July 10 to August 10, 1986.

Stokes began the excavation in July and completed the work on an unspecified date in September 1986. It is undisputed that Stokes worked on the Tatman property only on weekends; it is also undisputed that he did not hold a contractor's license. On September 10, 1986, Stokes presented a preliminary bill to Cathy for $5,000. The final bill followed shortly thereafter and totalled $5,558. The bill was submitted to

M–Bank of El Paso, Texas, which acts as trustee for the Tatman property. Despite repeated submissions by Stokes, the bank refused to pay.

Notwithstanding the fact that Cathy and Richard separated in November, they jointly executed a promissory note to Stokes for the full $5,558 on November 25, 1986. In the settlement agreement incorporated into their final divorce order filed May 13, 1988, Richard assumed sole responsibility for the still outstanding promissory note to Stokes.

ISSUES ON APPEAL

The Tatmans argue that Stokes is precluded from seeking recovery on the promissory note because he performed the work without a contractor's license, in violation of New Mexico licensing statutes. The Tatmans contend that Stokes is a contractor, within the definition of NMSA 1978, Section 60–13–3 (Repl.Pamp.1989), and is therefore prohibited from collecting for the excavation work under Section 60–13–30 (no contractor operating without a license may bring judicial action for compensation). Appellants' precise claim on appeal is that the district court's finding that Stokes came within the scope of a licensing exemption constitutes reversible error. The finding reads: "The work performed falls within the handyman exception." To review this finding, we must first turn to the statute itself.

■ Section 60–13–1.1 declares the purpose of the Construction Industries Licensing Act to be the promotion of the general welfare of the people of New Mexico by providing for protection of life and property by adopting standards for construction-related work. This Court has characterized the Act's purpose as protecting the public from "incompetent and irresponsible builders." *Peck v. Ives*, 84 N.M. 62, 66, 499 P.2d 684, 688 (1972). Pursuant to that goal, the statute requires licensing of parties engaged in any of the construction-related activities listed in Section 60–13–3(A), of which the excavation of earth is one. However, Section 60–13–3(D) goes on to provide for sixteen specific exemptions from the licensing requirement. The district court found that Stokes' excavation work fell within the scope of Subsection 60–13–3(D)(14), the handyman exemption. That section exempts from the licensing requirement

an individual who works on one undertaking or project at a time which, in the aggregate or singly, does not exceed seven thousand two hundred dollars ($7,200) compensation a year, the work being casual, minor or inconsequential such as, but not limited to, handyman repairs * * * and provided:

(a) the work is not part of a larger or major operation undertaken by the same individual or different contractor;

(b) the individual does not advertise or maintain a sign, card or other device which would indicate to the public that he is qualified to engage in the business of contracting; and

(c) the individual files annually with the division, on a form prescribed by the division, a declaration substantially to the effect that he is not a contractor within the meaning of the Construction Industries Licensing Act, that the work he performs is casual, minor or inconsequential and will not include more than one undertaking or project at one time and that the total amount of such contracts, in the aggregate or singly, will not exceed seven thousand two hundred dollars ($7,200) compensation a year[.]

The Tatmans argue that Stokes did not come within the exemption, first, because he exceeded the aggregate financial ceiling and, second, because he failed to file the required declaration. In support of the first contention the Tatmans cite financial figures for the years 1981–1984. Although the statute admits of some ambiguity on the issue of which year or years should be considered in measuring income, Stokes' income dating back five years prior to the Tatman work is not determinative. Moreover, Stokes testified that the Tatman work was his only excavation work in 1986, which totalled $5,558. He further testified that he received no income from related activities in either 1985 or 1987. The income ceiling serves primarily to disqualify

parties who do more than occasional jobs; given the undisputed testimony of Stokes' income from 1985 through 1987, we think there was substantial evidence to support the district court's implied finding on that element.

Second, the Tatmans contend that Stokes fails to qualify for the licensing exemption because he neglected to file annual declarations. The extensive list of exemptions from licensing reflects a clear legislative intent to exempt persons performing occasional, relatively minor jobs. Although Stokes has met the substantive requirements of Subsection (14) (no simultaneous jobs, financial ceiling, no advertising, etc.), he failed to comply with the procedural requirement of filing a declaration. Appellants contend that this is a mandatory requirement. We disagree.

■ The question whether a statutory requirement is mandatory or merely directory is answered by looking to the intent of the statute. In *State v. Vigil*, 74 N.M. 766, 398 P.2d 987 (1965), we concluded:

Generally, in considering whether a requirement of a statute is mandatory or directory, courts look to the subject matter, the importance of the requirement, and its relation to the general object intended to be secured by the act. Those directions in the statute which are not the essence of the things to be done are not commonly mandatory, particularly where, by failure to obey, no prejudice will result to those whose rights are protected by the statute.

*Id.* at 773, 398 P.2d at 991–92. *Accord Ross v. State Racing Commission*, 64 N.M. 478, 481, 330 P.2d 701, 703 (1958).

■ Given the essential goal of the statute to protect the public from incompetent and irresponsible builders, the filing requirement must be assessed according to its importance and relation to that intended goal. Subsection 60–13–3(D)(14) is intended to exempt from licensure persons who do occasional jobs without misrepresenting themselves as contractors. The relationship of the filing requirement to this goal is one primarily of administrative convenience. As a procedural requirement, it is not fundamentally necessary to identifying persons who fit the profile of exempt contractors drawn by the legislature. As we concluded in *State v. Vigil*, a directive is not commonly considered mandatory where it is not essential to statutory intent. Furthermore, in the instant case, Stokes' failure to submit his name to the agency will not result in any prejudice to the consumers whose rights are protected by the statute.

The Tatmans sought out Stokes and asked him to undertake a limited job. To find that a failure to file constitutes a complete bar to claiming an otherwise applicable exemption would vitiate legislative intent on an administrative, technical basis. We find the filing requirement to be directory, not mandatory, and as such not to constitute a bar to Stokes' eligibility for the intended exemption. We believe this interpretation is consistent with the overall statutory scheme and intent.

The facts of this case reflect none of the misrepresentation or incompetence that the licensing of contractors seeks to prevent. *See, e.g., State v. Jenkins*, 108 N.M. 669, 777 P.2d 908 (Ct.App.1989) (unlicensed contractor held himself out as contractor and misled consumer by providing a license number). Stokes did not advertise or try to compel the Tatmans to hire him. He undertook the job at their request and apparently completed it to their satisfaction. There is no indication that he held himself out as a contractor or misled the Tatmans regarding his knowledge or abilities. Indeed, the Tatmans reaffirmed their intent to pay Stokes, first by executing the promissory note and then by including it in their divorce settlement. It appears rather contrived for the Tatmans now to claim they are not responsible for that promissory note due to Stokes' failure to satisfy an administrative procedure. Such a result, on these facts, would not only be inequitable but also would fail to further the goal of consumer protection. We hold the district court's finding that Stokes was within the licensing exemption to be substantially supported by the evidence in this case.

For the above reasons, the judgment of the trial court is affirmed.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.